**Petition for Writ of Habeas Corpus Granted in Part and Denied in Part, and Memorandum Opinion filed April 8, 2014.**



In The

# 𝕱𝖔𝖚𝖗𝖙𝖊𝖊𝖓𝖙𝖍 𝕮𝖔𝖚𝖗𝖙 𝖔𝖋 𝕬𝖕𝖕𝖊𝖆𝖑𝖘

## NO. 14-14-00133-CV

### IN RE JAKESIA SADE CELESTINE, Relator

**ORIGINAL PROCEEDING**
**WRIT OF HABEAS CORPUS**
**247th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2012-21521**

## MEMORANDUM OPINION

On February 13, 2014, relator Jakesia Sade Celestine filed a petition for writ of habeas corpus in this Court. *See* Tex. Gov't Code § 22.221; *see also* Tex. R. App. P. 52. In the petition, relator asks this Court to compel the Honorable Carolyn Marks Johnson, sitting as a visiting judge of the 247th District Court of Harris County, to vacate an order holding relator in criminal contempt and confining her to the Harris County Jail for 180 days in 48-hour weekend increments. On

February 14, 2014, this Court ordered relator released upon the posting of bond, pending a final determination by this Court on the petition. *See* Tex. R. App. P. 52.8(b)(3). Having considered relator's petition and the real party's response, we grant relator's petition for writ of habeas corpus in part, and deny her petition in part.

## BACKGROUND

Relator is the mother of a minor child, M.J.T. The real party in interest is M.J.T.'s biological father, Marcus Thompson. On January 30, 2013, final orders were issued in a suit affecting the parent-child relationship, pursuant to which relator was required to surrender M.J.T. to Thompson for possession and access on the first, third, and fifth weekends of every month, and on certain Thursday evenings during M.J.T.'s regular school term.

On April 15, 2013, Thompson filed with the trial court a motion for enforcement by contempt, alleging that relator "willfully and intentionally disobeyed" the court's orders by, *inter alia*, failing to surrender M.J.T. to Thompson on five specified dates. Thompson specifically asked that relator be held in criminal contempt and sentenced to 180 days in jail, and further requested that Thompson be awarded make-up dates for the times where his right to possession and access was denied. Thompson's motion was heard before the Honorable Meca Walker, associate judge of the 247th District Court on June 5, 2013, who denied the motion. Thompson then filed a request for a de novo hearing, alleging that relator again failed to surrender M.J.T. on June 7, 2013.

The de novo hearing occurred on October 25, 2013 and January 24, 2014 before the Honorable Bonnie Crane Hellums, presiding judge of the 247th District

2

Court. At the conclusion of the hearing, the trial court found relator in contempt for failing to surrender M.J.T. on each of the dates alleged by Thompson in his original motion and request for de novo hearing. The court orally sentenced relator to 180 days in jail, to be served on weekends, and ordered her to pay attorney's fees.

A proposed contempt order was submitted to the trial court for entry on January 29, 2014. A visiting judge, the Honorable Carolyn Marks Johnson, was sitting by assignment at that time. Judge Johnson signed the written contempt order on January 30, 2014.[1] The order reflects the same specific instances of contempt cited by Judge Hellums at the hearing, imposes a sentence of 180 days in jail to be served on the weekends, and awards attorney's fees. The order also contains several provisions disputed by relator. These provisions include: (a) ordering relator to serve her sentence on each consecutive weekend; (b) setting a final release date of October 12, 2015; (c) awarding Thompson make-up time during the periods when relator is incarcerated; (d) characterizing the award of attorney's fees as child support and granting income withholding and a child support lien for enforcement of the fees award; and (e) ordering that "neither [relator] acting alone or [sic] in concert with [ ] her . . . attorney[] shall interfere or hamper" with certain "possession and access periods ordered for Marcus Thompson."

Relator filed her petition for writ of habeas corpus, in which she nominally presents four issues, but in actuality argues six issues. Relator asks this Court to

---

[1] The trial court's order is structured as a combined judgment of contempt and order of commitment. *See In re Markowitz*, 25 S.W.3d 1, 3 (Tex. App.—Houston [14th Dist.] 1998, orig. proceeding) (noting contempt judgment and commitment order may be combined in the same document).

declare the contempt order void and unenforceable in its entirety, remove relator from her threat of incarceration, and to restore all her rights as primary conservator of M.J.T.

## THE HABEAS CORPUS STANDARD

An original habeas corpus proceeding is a collateral attack on a contempt judgment. *Ex parte Merrikh*, 361 S.W.3d 209, 210 (Tex. App.—Houston [14th Dist.] 2012, orig. proceeding) (per curiam); *In re Stein*, 331 S.W.3d 538, 540 (Tex. App.—Houston [14th Dist.] 2011, orig. proceeding) (per curiam); *see also Ex parte Rohleder*, 424 S.W.2d 891, 892 (Tex. 1967) (orig. proceeding). The purpose of a writ of habeas corpus is not to determine the guilt of the contemnor, but only to determine whether she was afforded due process of law or if the order of contempt was void. *Merrikh*, 361 S.W.3d at 210; *Stein*, 331 S.W.3d at 540; *see also Ex parte Gordon*, 584 S.W.2d 686, 688 (Tex. 1979) (orig. proceeding). A court will issue a writ of habeas corpus if the order underlying the contempt is void, or if the contempt order itself is void. *Merrikh*, 361 S.W.3d at 210; *Stein*, 331 S.W.3d at 540; *see also Ex parte Shaffer*, 649 S.W.2d 300, 301–02 (Tex. 1983) (orig. proceeding); *Gordon*, 584 S.W.2d at 688. An order is void if it is beyond the power of the court to enter it, or if it deprives the relator of liberty without due process of law. *Merrikh*, 361 S.W.3d at 210; *Stein*, 331 S.W.3d at 540; *see also Ex parte Barlow*, 899 S.W.2d 791, 794 (Tex. App.—Houston [14th Dist.] 1995, orig. proceeding). Relator bears the burden of showing her entitlement to relief in a habeas corpus proceeding. *Barlow*, 899 S.W.2d at 794; *see also In re Coppock*, 277 S.W.3d 417, 418 (Tex. 2009) (orig. proceeding).

4

## Issue No. 1: Inclusion of Additional Provisions in the Written Order

In her first issue, relator challenges the inclusion of provisions in the written contempt order that were not explicitly or clearly referenced in the trial court's oral rendition or reflected in the docket sheet entry. Relator argues in particular that the trial court's orders were ambiguous as to whether relator was required to serve her sentence each successive weekend or only during Thompson's weekends of possession. Relator, however, provides no legal citation or analysis to support her suggestion that a final, written contempt order cannot include provisions not explicitly stated in the court's oral rendering or reflected in the docket sheet entry. *See* Tex. R. App. P. 52.3(h) ("The petition must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the appendix or record."). Therefore, relator has not satisfied her burden to demonstrate entitlement to relief on her first issue.

## Issue No. 2: Compliance with Texas Family Code § 157.166

In her second issue, relator argues that the contempt order does not comply with Section 157.166 of the Texas Family Code, which specifies the requirements for an enforcement order. That section states, in relevant part:

(a) An enforcement order must include:

(1) in ordinary and concise language the provisions of the order for which enforcement was requested;

(2) the acts or omissions that are the subject of the order;

(3) the manner of the respondent's noncompliance; and

5

(4) the relief granted by the court.

(b) If the order imposes incarceration or a fine for criminal contempt, an enforcement order must contain findings identifying, setting out, or incorporating by reference the provisions of the order for which enforcement was requested and the date of each occasion when the respondent's failure to comply with the order was found to constitute criminal contempt.

Relator merely lists some of the requirements in Subsection (a) of this statutory provision, without explaining how the trial court's order is deficient. An examination of the order, however, reveals that the trial court did what was required. Specifically, the trial court stated the provisions of the underlying final orders that were the subject of Thompson's motion for enforcement. *See* Tex. Fam. Code § 157.166(a)(1), (b). The court identified the specific dates of relator's noncompliance, states how the noncompliance occurred, and holds relator in contempt for each of those instances. *See* Tex. Fam. Code § 157.166(a)(2), (a)(3), (b). And the court stated the relief granted. *See* Tex. Fam. Code § 157.166(a)(4). Part of the purpose of this statutory provision is to ensure that a contemnor is provided sufficient due process—i.e., notice of the when, how, and by what means the contemnor was guilty of contempt. *See In re Davis*, 305 S.W.3d 326, 332–333 (Tex. App.—Houston [14th Dist.] 2010, orig. proceeding) (per curiam); *see also In re Broussard*, 112 S.W.3d 827, 834 (Tex. App.—Houston [14th Dist.] 2003, orig. proceeding). Relator does not identify any information required by statute or common law to satisfy due process that is missing from the trial court's order. Therefore, relator failed to satisfy her burden to demonstrate entitlement to relief on her second issue.

**Issue No. 3: Compliance with Texas Family Code § 157.168**

In her third issue, relator argues that the contempt order violates Section 157.168(a)(1) of the Texas Family Code by awarding Thompson excessive make-up periods of possession of and access to M.J.T. That section provides: "A court may order additional periods of possession of or access to a child to compensate for the denial of court-ordered possession or access. The additional periods of possession or access[ ] must be of the same type and duration of the possession or access that was denied . . . ." Thus, a trial court abuses its discretion by awarding make-up time that is greater than those periods for which possession or access was denied in contravention of Section 157.168. *See In re Ramberansingh*, No. 05-13-00558-CV, 2013 WL 3871047, *1 (Tex. App.—Dallas July 23, 2013, orig. proceeding) (mem. op.) (concluding trial court abused its discretion by awarding make-up time in excess of the weekend period where possession was withheld); *see also In re Zevallos*, No. 14-11-01080-CV, 2012 WL 359301, *3 (Tex. App.—Houston [14th Dist.] Feb. 2, 2012, orig. proceeding) (mem. op. per curiam) (indicating that phrase "of the same type and duration" in Section 157.168(a)(1) means "the same amount of time") (citing *Romero v. Zapien*, No. 13-07-00758-CV, 2010 WL 2543897, *15, (Tex. App.—Corpus Christi June 24, 2010, pet. denied) (mem. op.), *disapproved of on other grounds by Iliff v. Iliff*, 339 S.W.3d 74, 78, n.2 (Tex. 2011)).

The make-up time awarded by the trial court in its contempt order far exceeds those periods the court found Thompson was denied possession of M.J.T. The trial court found relator in contempt for failing to surrender M.J.T. on six instances—four Thursday evenings (where Thompson's possession would be for

7

fourteen hours each), and two Friday evenings (where Thompson's possession would be for 48 hours each). Thus, at most, the trial court found Thompson to have been denied possession of or access to M.J.T. for 152 hours, or slightly over six days. The court, however, awarded make-up time to Thompson for each 48-hour weekend period in which relator would be incarcerated through October 12, 2015—a total of 180 days. This make-up time is not "of the same type and duration of the possession or access that was denied." Tex. Fam. Code § 157.168(a)(1). Therefore, the trial court exceeded its authority by awarding excessive make-up time. *See Ramberansingh*, 2013 WL 3871047 at *1.

"[I]f a severable portion of the contempt or commitment order is void, an appellate court may strike the offending portion and deny relief as to the valid portion of the order." *Broussard*, 112 S.W.3d at 831. The make-up time provision of the trial court's order is severable from the remainder of the order. Accordingly, we strike the following language on page 5 of the court's order:

> IT IS FURTHER ORDERED, that in addition to his regularly schedule [sic] possession and access periods in the January 30, 2013 orders of this Court in this cause, Movant, Marcus Thompson, shall have possession and access of his minor daughter, [M.J.T.] beginning 6:00 pm each and every Friday and ending at 6:00 pm the following Sunday during each and every incarceration period ordered for Respondent, Jakesia Sade Celestine through October 12, 2015.

We further strike the following language on page 6 of the court's order:

> IT IS ORDERED that Jakesia Sade Celestine shall surrender the minor child, [M.J.T.] through a competent adult at 6:00 pm at the address of 247 Bizerte[,] Houston, Texas 77022 on each and every Friday beginning at 6:00 pm starting January 31, 2014 and continuing

8

through October 10, 2015 to Marcus Thompson or his designated competent adult.

Although we strike these void provisions of the order, the trial court retains the discretion to issue a supplemental order reforming its award of make-up time to equate the periods of possession found to have been denied to Thompson. *See Ramberansingh*, 2013 WL 3871047 at *1 (instructing trial court to render a new order that complies with Section 157.168(a)(1)).

**Issue No. 4: Setting a Specific End Date**

In her fourth issue, relator argues that by setting a specific end date of her contempt sentence, the effect of the trial court's order is to deny her consideration for "good time" credit provided by statute. "A trial judge has no authority to set an ending date on a criminal contempt sentence because that denies the contemnor her right to be considered for 'good time,' a statutory credit she may receive for good behavior in jail." *Davis*, 305 S.W.3d at 333; *see also* Tex. Code Crim. Proc. art. 42.032. Here, the trial court did set a specific end date for relator's sentence. "The portion of the order setting an ending date for relator's sentence is therefore void." *Davis*, 305 S.W.3d at 333. The specific end date, however, can be struck from the contempt order, while leaving the valid portions in place. *See id.* Accordingly, we strike the following language on page 3 of the court's order: "with the last weekend beginning Friday, October 10, 2015 at 6:00 pm and final release date of Sunday, October 12, 2015 at 6:00 pm or further order of this Court."

**Issue No. 5: Compliance with Texas Family Code § 157.167**

Relator attacks the trial court's award of attorney's fees on three grounds, citing Section 157.167(b) of the Texas Family Code in support. First, relator argues

that attorney's fees are not enforceable by contempt. Second, she argues that it was an abuse of discretion to characterize the fees as child support. And third, she argues income withholding is not permitted for the award of attorney's fees. Relator's first argument is misplaced, because relator was not held in contempt for non-payment of attorney's fees and, moreover, the trial court's order does not make any reference to enforcement of the awarded attorney's fees by contempt.

As for relator's second and third arguments, we turn to the cited statute. Section 157.167(b) of the Texas Family Code mandates the award of reasonable attorney's fees and court costs in specific circumstances. That provision, however, also conditions any award made pursuant to it. Specifically:

> If the court finds that the enforcement of the order with which the respondent failed to comply was necessary to ensure the child's physical or emotional health or welfare, the fees and costs ordered under this subsection may be enforced by any means available for the enforcement of child support, including contempt, but not including income withholding.

Tex. Fam. Code § 157.167(b). Thus, where a trial court awards fees and costs under this provision, that award cannot be enforced through income withholding, and the award can be enforced through the same means as child support obligations only upon a requisite finding by the court.

Here, there is no finding in the trial court's contempt order that enforcement of Thompson's right to possession of or access to M.J.T. "was necessary to ensure the child's physical or emotional health or welfare." Nevertheless, the trial court deemed the payment of this award "as child support for collection," and further granted a "withholding order and a child support lien." The withholding order is

10

prohibited by statute. Tex. Fam. Code § 157.167(b). And a child support lien is a means of enforcing an award of child support, *see* Tex. Fam. Code § 157.312, which is an impermissible approach here in the absence of a finding that the underlying possession order was necessary to ensure M.J.T.'s physical or emotional health or welfare. *See Tucker v. Thomas*, 405 S.W.3d 694, 706–07 (Tex. App.—Houston [14th Dist.] 2011) (en banc) (noting that under this statutory provision "the trial court only has the authority to enforce the fees and costs if the court makes the required finding, and, even then, the trial court does not have the authority to enforce these fees and costs by means of income withholding"), *rev'd on other grounds*, 419 S.W.3d 292 (Tex. 2013). Therefore, by providing for the enforcement of its attorney's fees award through a child support lien and income withholding, the trial court exceeded its authority.

As with the other void portions, however, these provisions can be struck from the contempt order while leaving the valid portions in place. *See Broussard*, 112 S.W.3d at 831. Accordingly, we strike the following language on page 5 of the court's order: "deemed as child support for collection. A withholding order and child support lien is GRANTED for enforcement which the attorney may enforce in her own name." We further strike the following language also on page 5 of the court's order, under the heading of "Judgment": "deemed as child support for collection."

**Issue No. 6: Alleged Preclusion of Communications with Counsel**

In her final issue, relator asserts that the trial court's order precludes her from seeking or receiving advice from her attorney in certain regards, and that this violates the attorney-client privilege. The provision of the order at issue is found in

11

the make-up time paragraph, and states that "neither [relator] acting alone or [sic] in concert with others, her family, friends, attorney, shall interfere or hamper these possession and access periods ordered for" Thompson. Whatever the trial court may have intended with this provision, its prohibition on relator and her attorney acting in concert to "interfere or hamper" Thompson's possession does not appear to preclude communications between relator and her attorney. Therefore, relator has not satisfied her burden to demonstrate entitlement to relief on her sixth issue.

## CONCLUSION

For the foregoing reasons, we grant relator's petition for writ of habeas corpus with respect to her third, fourth, and fifth issues stated above, and strike the void language of the trial court's contempt order as herein directed. In all other respects, relator's petition for writ of habeas corpus is denied.

We further revoke the bond set by this Court on February 14, 2014, and order relator remanded to the to the custody of the Harris County Sheriff in accordance with the trial court's contempt order as modified by this opinion.

PER CURIAM

Panel consists of Justices Boyce, Christopher, and Brown.